UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

                                 Cr. 15-cr-20774

       Plaintiff,

                                 HON. JOHN CORBETT OMERA

Keith Collier,

       Defendant.

_____/

**DEFENDANT COLLIER'S MOTION TO SUPPRESS ALL EVIDENCE IMPROPERLY SEIZED FROM THE SECOND FLOOR UNIT BECAUSE AGENTS EXCEEDED THE SCOPE OF THE WARRANT AT 202 W. MONTANA, DETROIT MI, AND REQUEST FOR AN EVIDENTIARY HEARING**
(PRE-TRIAL MOTION NO. 6)

       NOW COMES the Defendant, KEITH COLLIER, hereinafter ("COLLIER") by and through his attorney, BERTRAM L. JOHNSON, pursuant to the Fourth Amendment and requests this Honorable Court to Suppress All Evidence Improperly Seized From The Second Floor Unit, during the execution of a Search and Seizure Warrant for 202 W. Montana, Detroit, Michigan . In support of his motion, Defendant Collier states as follows:

1. The Affiant to the Search Warrant is Special Agent Brian Sartori.

2. Agent Sartori is an experienced DEA Agent, having participated in numerous investigations and searches.  Agent Sartori has been involved in numerous searches, preparation of affidavits, preparation of search warrants as well as the execution of said warrants. He has been employed by the DEA since 1997.

3. In the instant case, Agent Sartori and other law enforcement agents conducted surveillance on multiple occasions of Defendant Collier and 202 W. Montana Street, in Detroit.

4. On May of 20, 2015, Agent Sartori along with other law enforcement officers were armed with a wealth of information from multiple sources regarding the Montana residence.

5. In April of 2015 (date unknown), a third party allegedly made a purchase from the residence (discovery on this incident has not been provided and is the subject of another motion).

6. That all information recorded in the reports of law enforcement officers which has been provided in discovery, suggest activity in the front of the residence at 202 W. Montana.

7. Special Agent Shon T. Joyner was also involved in the instant investigation. On multiple occasions, Special Agent Joyner conducted surveillance at 202 W. Montana in the City of Detroit, prior to May 21, 2015.

8. Special Agent Joyner is also an experienced agent. Agent Joyner was sworn in with the Drug Enforcement Administration in February of 2012.

9. At no point in the discovery provided does any law enforcement officer, special agent or informant suggest any activity relative to the rear of the building or upstairs.

10. Based upon the information received, law enforcements surveillance and investigation, Special Agent Sartori signed an affidavit and presented it to Judge Mark Somers of the 19th District Court in Dearborn.

11. That based upon the affidavit presented, Judge Somers signed an Order authorizing the search of two residences, 30249 Summit Drive Farmington Hills, Michigan and 202 W. Montana Street, Detroit, Michigan. (Exhibit No. 1, attached).

12. The description provided by DEA Agents who received the warrant to search 202 W. Montana Street, Detroit, Michigan, is as follows:

    ***Single family residence utilized by Keith COLLIER.*** The residence Is located on the Northside of Montana Street between John R Street and Woodward Avenue. The residence has a reddish brick And a reddish colored roof. ***The residence has a black armor guard on the front door. The numbers 202 are on the front door.***
    (Exhibit No. 1, attached)

13. Agent Sartori provided information in the affidavit *to support the search of the single family residence* known as 202 W. Montana, Detroit, Michigan. ( Affidavit is attached as Exhibit No. 2)

14. Agent Sartori provided information in the affidavit to support the search of *the single family residence that … has a black armor guard on the front door.* The numbers 202 are on the front door.

15. Law enforcement likely conducted a pre raid debriefing/meeting regarding this search of the location and those who may be present and a plan of execution of the raid at the single family residence. (Notes have been requested, however, to date have not been provided).

16. The search warrant was executed on May 21, 2015, at approximately 3:55 pm at 202 W. Montana, Detroit, Michigan. (DEA 6 of Special Agent Joyner, pages 1 & 2 attached as Exhibit No. 3).

17. The team executing the search warrant included Special Agent Joyner. It appears that Special Agent Satori was not a part of the raid team for this residence.

18. Upon approaching the residence, law enforcement approached the front door, announced their presence and waited for an answer, no one answered.

19. *Law enforcement officers then forced entry through the black armored guard on the front door of 202 W. Montana, Detroit, Michigan.*

20. That after making entry into the residence, a protective sweep of the residence was conducted.

21. No one was present during the search of the downstairs.

22. That law enforcement officers during the protective sweep realized that the residence was a multiple unit dwelling.

> *"While conducting a protective sweep of the residence, agents observed that the residence had been modified and had a separate entry for the residence on the second floor."*
> *(Exhibit No. 3, Page 2).*

23. Law enforcement officers then realized that there was a separate unit upstairs.

24. Law enforcement officers could NOT access the second floor unit from the downstairs unit. Each unit has its own entrance.

25. The only common area for the two units is a stairwell in the rear of the residence.

26. Law enforcement had no authorization whatsoever to enter or search the unit on the second floor of 202 W. Montana Street in the City of Detroit.

27. Upon learning of this residence being a multiple unit building and no authorization to search, the agents should have not proceeded without a warrant. *United States v. King*, 227 F3d. 732 (6th Circuit 2000) *See also, Garrison,* 480 U.S. at 87, *Brindley,* 192 F.3d at 531; *Lambert,* 771 F.2d at 93.

28. Despite the obligation to not proceeded without a warrant for the second floor unit,

> ***"After climbing the stairs, agents/officers came upon another entry door with armored guard.*** Agents /officers continued to announcing in a loud voice the purpose and intent, 'Police Search Warrant' several times. *Agents/officers again made a forced entry into the second floor area of the residence. "* (Exhibit No. 3)

29. Law enforcement officers conducted a full blown search of both units.

30. The downstairs unit was occupied by Venton Tally.

31. Law enforcement officers discovered documents, proof of residency for Venton Tally as well as paraphernalia and drugs in the downstairs unit.

32. While searching the downstairs unit, law enforcement discovered 79.6 grams of cocaine in the northwest bedroom closet; 39.1 grams of heroin in the northwest bedroom closet and 51.5 grams of crack cocaine in the northwest bedroom closet.

33. Law enforcement also discovered sandwich bags, scales, and a glass measuring cup with residue on the first floor in the northwest bedroom closet.

34. At the time of the raid, Venton Tally was on supervised release before the Honorable Robert H. Cleland. The original offenses included Conspiracy to Possess with the Intent to Distribute Crack Cocaine.

35. Among the paperwork discovered in the first floor unit was handwritten notes titled "Heroin" in the northwest bedroom.

36. On March 25, 2015, U.S. Probation Officer Bennedette Moore who was supervising Venton Tally conducted a home inspection of the Montana residence.

37. Ms. Moore described the residence in part, by indicating that the upstairs of the residence was rented by another tenant. Venton Tally only had a key to the front door and could not access the upstairs unit. (See Exhibit No. 4, attached).

38. On January 15, 2016, U.S. Probation Officer Nioaka L. Morton conducted a home inspection of the Montana residence. Ms. Morton describes the first floor unit, in part as follows:

> "This writer observed that the upstairs stairwell has been completely sealed off with 2x4's (looks like a floor). The small area is used as a closet/storage. As such, the upstairs can only be entered through the rear outside door. The offender states that he does not have a key to the upstairs unit." (Exhibit No. 4, page 5 attached)

39. The second floor unit was occupied by Defendant Collier.

40. Defendant Collier was not present during the search of the second floor unit.

41. During the search of the second floor unit, law enforcement officers discovered various documents and drugs.

42. The drugs seized from the second floor unit included approximately 1,068.9 grams of Heroin and approximately 579.7 grams of cocaine.

43. Drug paraphernalia was also discovered when the second floor unit was searched. Items such as a digital scale and used heat seal plastic bags were confiscated.

44. The search of the second floor unit by law enforcement officers also resulted in the seizure of a .45 caliber firearm, a magazine and ammunition, in various locations within the unit.

45. The search of the second floor unit exceeded the authority granted by the warrant and was in violation of Defendant Keith Collier's Fourth Amendment rights.

46. As in *King*, the officer (s) should have sought a search warrant for the second floor unit when they came upon it. The decision to proceed without a warrant was flagrant and unreasonable under these facts.

WHEREFORE, Defendant Keith Collier, respectfully request that this Honorable Court issue an Order suppressing all evidence seized from the second floor unit on May 21, 2015.

                                        Respectfully Submitted,

                                        */s/* Bertram L. Johnson_____

                                        Bertram L. Johnson
                                        Attorney for Defendant Collier
                                        23756 Michigan Avenue, Suite 300
                                        Dearborn, Michigan 48124

Dated: August 29, 2016

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

                         Cr. 15-cr-20774

    Plaintiff,

                        HON. JOHN CORBETT OMERA

Keith Collier,

    Defendant.

_____/

**DEFENDANT COLLIER'S BRIEF IN SUPPORT OF MOTION TO SUPPRESS ALL EVIDENCE IMPROPERLY SEIZED FROM THE SECOND FLOOR UNIT BECAUSE AGENTS EXCEEDED THE SCOPE OF THE WARRANT AT 202 W. MONTANA, DETROIT MI, AND REQUEST FOR AN EVIDENTIARY HEARING**
(PRE-TRIAL MOTION NO. 6)

      NOW COMES the Defendant, KEITH COLLIER, hereinafter ("COLLIER") by and through his attorney, BERTRAM L. JOHNSON, and files the instant Brief in support of said Motion.

## *LEGAL ANALYSIS*

      The Fourth Amendment states, inter alia, that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, ***and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.***   Probable cause to search is "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983) (Emphasis added). The case of *Maryland v. Garrison*, 480 U.S. 86 (1987) is instructive on the issue of whether law enforcement officers exceeded the scope of a warrant when executing the warrant.

In *Garrison*, Baltimore police officers obtained and executed a warrant to search the person of Lawrence McWebb and "the premises known as 2036 Park Avenue third floor apartment." When the police applied for the warrant and when they conducted the search pursuant to the warrant, they reasonably believed that there was only one apartment on the premises described in the warrant.

In fact, the third floor was divided into two apartments, one occupied by McWebb and one by respondent Garrison. Before the officers executing the warrant became aware that they were in a separate apartment occupied by respondent, they had discovered the contraband that provided the basis for respondent's conviction for violating Maryland's Controlled Substances Act.

The question presented is whether the seizure of that contraband was prohibited by the Fourth Amendment. The Court went on to frame the issues, the case presents two separate constitutional issues, one concerning the validity of the warrant and the other concerning the reasonableness of the manner in which it was executed. See *Dalia v. United States,* 441 U.S. 238, 258 (1979).

In Garrison, the law enforcement officers discontinued the search as soon as they became aware of the second unit. Discontinuing the search was pivotal in that case to upholding the search. The Court stated:

> We have no difficulty concluding that the officers' entry into the third-floor common area was legal; they carried a warrant for those premises, and they were accompanied by McWebb, who provided the key that they used to open the door giving access to the third-floor common area. *If the officers had known, or should have known, that the third floor contained two apartments before they entered the living quarters on the third floor, and thus had been aware of the error in the warrant, they would have been*

> *obligated to limit their search to McWebb's apartment.* [480 U.S. 79, 87]
> Emphasis added

> *Moreover, as the officers recognized, they were required to discontinue the search of respondent's apartment as soon as they discovered that there were two separate units on the third floor and therefore were put on notice of the risk that they might be in a unit erroneously included within the terms of the warrant*. The officers' conduct and the limits of the search were based on the information available as the search proceeded. While the purposes justifying a police search strictly limit the permissible extent of the search, the Court has also recognized the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants. Noting, <u>Brinegar v United States</u>, 328 U.S. 166, 176 (!949)

The Sixth Circuit has also addressed the issue of the search of multiple unit buildings in <u>United States v. King</u>, 227 F.3d 732 (6th Circuit 2000). In *King,* the District court's order denying defendant's motion to suppress was reversed; the officer exceeded the scope of the warrant in searching the basement area. Good faith exception to the exclusionary rule did not apply.

The Court in *King* provided the following recitation of facts, taken from this Court's prior decision in that case:

> On October 31, 1995, members of the Federal Bureau of Investigation's Caribbean Gang Task Force obtained a warrant to search 1437 East 116th Street, Cleveland, Ohio, for drug paraphernalia, and weapons. The warrant authorized a search of the "premises, curtilage, containers, and persons therein" at a location described as "1437 East 116th Street, Cleveland, Cuyahoga County, Ohio, and being more fully described as the downstairs unit in a two-family, two and one half story, white wood [-]sided dwelling with green trim."

> Although the record is sparse, it appears that the "downstairs unit" is a five-room apartment consisting of a front room, two bedrooms, a kitchen, and a bathroom. One bedroom and the kitchen are located in the rear of the apartment. There is a door in the kitchen that leads to a common hallway. The hallway contains a door that leads into the building's basement. A person cannot [738] directly access the basement from the downstairs

>unit. Defendants Kenneth and Kewin King lived in the downstairs unit.
>
>On November 1, members of the Task Force executed the warrant. As the agents entered the downstairs unit, they observed defendants standing near the kitchen. Kenneth ran to the second floor but was apprehended by one of the agents. Both defendants were subsequently secured in the downstairs unit.
>
>The officers searched the downstairs unit and found 60.6 grams of cocaine base in one bedroom and 16.65 grams in the other bedroom. One of the agents exited the downstairs unit and searched the building's basement where he discovered 443 grams of cocaine base. *King,* 127 F.3d at 485.

While analyzing whether the Agents improperly exceeded the scope of the warrant when searching the basement the Court addressed directly the issue of multiple unit building searches. While discussing *United States v. Gahagan*, 865 F.2d 1490 (6th Cir. 1989), the Court in *King* stated:

>In Gahagan, this Court created a two-part test for determining whether a description in a warrant is sufficient to satisfy the particularity requirement: (1) whether the place to be searched is described with sufficient particularity as to enable the executing officers to locate and identify the premises with reasonable effort; and (2) whether there is reasonable probability that some other premises may be mistakenly searched. 865 F.2d at 1496. "For purposes of satisfying the Fourth Amendment, searching two or more apartments in the same building is no different than searching two or more completely separate houses." See United States v. Shamaeizadeh, 80 F.3d 1131, 1137 (6th Cir. 1996); see also United States v. Gonzalez, 697 F.2d 155, 156 (6th Cir. 1983) (noting that "it is settled that where . . . a structure is divided into more than one unit, probable cause must exist for each unit"); United States v. Votteller, 544 F.2d 1355 (6th Cir. 1976); United States v. Baldacchino, 762 F.2d 170, 177 (1st Cir. 1985).

The Court in King further stated,...However, because a valid search warrant can turn into an invalid general search if officers flagrantly disregard the limitations of the warrant, the issue

in the case at hand becomes whether the officer's search of the basement was a flagrant disregard for the limitations of the warrant. See Brindley v. Best, 192 F.3d 525, 531 (6th Cir. 1999) (citing United States v. Lambert, 771 F.2d 83, 93 (6th Cir. 1985)). The test for making such a determination is whether the officer's actions were reasonable. See Brindley, 192 F.3d at 531. In the case at hand, the officer's actions were not reasonable inasmuch as the area was not "common" area for purposes of being included within the parameters of the search of Defendant's unit, see Carriger, 541 F.2d at 551, McCaster, 193 F.3d at 934 (Heaney, J. concurring in part and dissenting in part), and the nature of the location of the basement in this two-unit dwelling should have put the agents on notice that the search warrant did not include this area. See Garrison, 480 U.S. at 87; see also United States v. Heldt, 215 U.S. App. D.C. 206, 668 F.2d 1238, 1262 (D.C. Cir. 1981) (noting that the authority to search under a valid warrant "is limited to the specific places described in it, and does not extend to additional or different places").

## *AGENTS IN THIS CASE EXCEEDED THE SCOPE OF THE OF THE WARRANT WHEN FORCIBLY ENTERING AND SEARCHING THE SECOND FLOOR UNIT AT THE MONTANA RESIDENCE*

The description provided by DEA Agents who received the warrant to search 202 W. Montana Street, Detroit, Michigan, is as follows:

> ***Single family residence utilized by Keith COLLIER.*** The residence Is located on the Northside of Montana Street between John R Street and Woodward Avenue. The residence has a reddish brick and a reddish colored roof. ***The residence has a black***

>> *armor guard on the front door. The numbers 202 are on the front door.* (Exhibit No. 1, attached)

Agent Sartori provided information in the affidavit *to support the search of the single family residence* known as 202 W. Montana, Detroit, Michigan. (Affidavit is attached as Exhibit No. 2) Agent Sartori provided information in the affidavit to support the search of *the single family residence that … has a black armor guard on the front door.* The numbers 202 are on the front door.

Law enforcement likely conducted a pre - raid debriefing/meeting regarding this search of the location and those who may be present and a plan of execution of the raid at the single family residence. (Notes have been requested, however, to date have not been provided). The search warrant was executed on May 21, 2015, at approximately 3:55 pm at 202 W. Montana, Detroit, Michigan. (DEA 6 of Special Agent Joyner, pages 1 & 2 attached as Exhibit No. 3).

The team executing the search warrant included Special Agent Joyner. It appears that Special Agent Sartori was not a part of the raid team for this residence. Upon approaching the residence, law enforcement approached the front door, announced their presence and waited for an answer, no one answered. *Law enforcement officers then forced entry through the black armored guard on the front door of 202 W. Montana, Detroit, Michigan.* That after making entry into the residence, a protective sweep of the residence was conducted. No one was present during the search of the downstairs.

Law enforcement officers during the protective sweep realized that the residence was a multiple unit dwelling.

> ***"While conducting a protective sweep of the residence, agents observed that the residence had been modified and had a separate entry for the residence on the second floor."*** *(Exhibit No. 3, Page 2).*

Law enforcement officers then realized that there was a separate unit upstairs. Law enforcement officers could NOT access the second floor unit from the downstairs unit. Each unit has its own entrance. The only common area for the two units is a stairwell in the rear of the residence. The law enforcement had no authorization whatsoever to enter or search the unit on the second floor of 202 W. Montana Street in the City of Detroit. Upon learning of this residence being a multiple unit building and no authorization to search, the agents should have not proceeded without a warrant. <u>United States v. King</u>, 227 F3d. 732 (6th Cir. 2000) *See also,* <u>Garrison</u>, 480 U.S. at 87, <u>Brindley</u>, 192 F.3d at 531; <u>Lambert,</u> 771 F.2d at 93.

Despite the obligation to not proceed without a warrant for the second floor unit,

> ***"After climbing the stairs, agents/officers came upon another entry door with armored guard.*** Agents /officers continued to announcing in a loud voice the purpose and intent, 'Police Search Warrant' several times. ***Agents/officers again made a forced entry into the second floor area of the residence."***

Law enforcement officers conducted a full blown search of both units.

The downstairs unit was occupied by Venton Tally. Law enforcement officers discovered documents, proof of residency for Venton Tally as well as paraphernalia and drugs in the

downstairs unit. While searching the downstairs unit, law enforcement discovered 79.6 grams of cocaine in the northwest bedroom closet; 39.1 grams of heroin in the northwest bedroom closet and 51.5 grams of crack cocaine in the northwest bedroom closet. Law enforcement also discovered sandwich bags, scales, and a glass measuring cup with residue on the first floor in the northwest bedroom closet. Among the paperwork discovered in the first floor unit was handwritten notes titled "Heroin" in the northwest bedroom.

At the time of the raid the, Venton Tally was on supervised release before the Honorable Robert H. Cleland. The original offenses included Conspiracy to Possess with the Intent to Distribute Crack Cocaine.

On March 25, 2015, U.S. Probation Officer Bennedette Moore who was supervising Venton Tally conducted a home inspection of the Montana residence. Ms. Moore described the residence in part, by indicating that the upstairs of the residence was rented by another tenant. Venton Tally only had a key to the front door and could not access the upstairs unit. (See Exhibit No. 4, attached).

On January 15, 2016, U.S. Probation Officer Nioaka L. Morton conducted a home inspection of the Montana residence. Ms. Morton describes the first floor unit, in part as follows:

> "This writer observed that the upstairs stairwell has been completely sealed off with 2x4's (looks like a floor). The small area is used as a closet/storage. As such, the upstairs can only be entered through the rear outside door. The offender states that he does not have a key to the upstairs unit." (Exhibit No. 4, page 5 attached)

The second floor unit was occupied by Defendant Collier. Defendant Collier was not present during the search of the second floor unit. During the search of the second floor unit, law enforcement officers discovered various documents and drugs.

The drugs seized from the second floor unit included approximately 1,068.9 grams of Heroin and approximately 579.7 grams of cocaine. Drug paraphernalia was also discovered when the second floor unit was searched. Items such as a digital scale and used heat seal plastic bags were confiscated. The search of the second floor unit by law enforcement officers also resulted in the seizure of a .45 caliber firearm, a magazine and ammunition, in various locations within the unit.

## *CONCLUSION*

The search of the second floor unit, exceeded the authority granted by the warrant and was in violation of Defendant Keith Collier's Fourth Amendment rights. As in *King*, the officer (s) should have sought a search warrant for the second floor unit when they came upon it. The decision to proceed without a warrant was flagrant and unreasonable under these facts.

WHEREFORE, Defendant Keith Collier, respectfully request that this Honorable Court issue an Order suppressing all evidence seized from the second floor unit on May 21, 2015.

Respectfully Submitted,

*/s/* Bertram L. Johnson_____

Bertram L. Johnson
Attorney for Defendant Collier
23756 Michigan Avenue, Suite 300
Dearborn, Michigan 48124

Dated: August 29, 2016