UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

                                     Case No. 15-20774

v.

                                     Hon. John Corbett O'Meara

D-1 KEITH COLLIER,

    Defendant.

_____/

## OPINION AND ORDER

Before the court are several pretrial motions filed by Defendant. The court heard oral argument on December 1, 2016, and took the matter under advisement.

## BACKGROUND FACTS

After receiving information that Defendant Keith Collier was involved in drug trafficking, the Drug Enforcement Agency ("DEA") began an investigation. DEA Special Agent Bryan Sartori applied for a search warrant for two locations: Defendant's residence on Summit Drive in Farmington Hills, Michigan, and a house on Montana Street in Detroit. See Govt. Ex. A (search warrant affidavit and warrant). The search warrant affidavit was based in part upon information learned from several confidential informants. See id.

On May 21, 2015, DEA agents executed search warrants at Defendant's residence in Farmington Hills as well as at the house on Montana Street in Detroit. At the Farmington Hills address, agents found two handguns and approximately $200,000 in cash. They also found mail addressed to Collier and a water bill for the Montana Street address. At the Montana Street house, they found a loaded handgun, heroin, crack and powdered cocaine, and Fentanyl, as well as drug packaging materials and latex gloves, zip lock bags, a strainer, rubber bands, tape razors, face masks, a coffee grinder, measuring cups, and cutting agents.

At the time the search warrants were executed, Collier was not at either house and was not arrested. The DEA sent items found at the Montana Street address to the Michigan State Police for DNA testing. On October 2, 2015, the Michigan State Police confirmed that Collier's DNA was found in one of the used face masks. After a criminal complaint was issued, Collier was arrested on November 19, 2015.

On December 3, 2015, Collier was indicted on five counts: felon in possession of two firearms found at the Farmington Hills residence; possession with intent to distribute 100 grams or more of heroin; possession with intent to distribute cocaine; possession of a firearm in furtherance of a drug trafficking crime; and felon in possession of a firearm found at the Montana Street address.

**LAW AND ANALYSIS**

Defendant has filed several pretrial motions seeking discovery and to suppress evidence. See Docket Nos. 27-32.

**I.	Motion for Disclosure of Confidential Informant**

Defendant seeks the disclosure of one of the confidential informants who provided information underlying the search warrant, "DEA 3." In April 2015, DEA 3 initiated a controlled purchase of heroin from Defendant through a third party. Although information gleaned from this purchase was used in the search warrant affidavit, Defendant is not charged with a crime regarding DEA 3's controlled purchase of heroin. Rather, the charges against Defendant derive from the guns and drugs seized during the execution of the search warrants at the Farmington Hills and Montana Street locations.

Under similar circumstances, the Sixth Circuit has held that the government need not disclose the identity of the confidential informant. See United States v. Ray, 803 F.3d 244, 274 (6th Cir. 2015). The government has a "limited privilege" to withhold the identity of persons who provide information to law enforcement. "When 'disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.'" Ray, 803 F.3d at

273 (quoting Roviaro v. United States, 353 U.S. 53, 60-61 (1957)).

In Ray, the court held that the identity of a confidential informant was not relevant or helpful to the defense because "the only record evidence of the role played by the CI in this case is that the CI supplied the information to law enforcement that ultimately led to a fruitful search." The court reasoned that "Ray was not charged with any crimes related to the controlled buy, thus the CI was not involved in, and could not testify about, the crimes for which Ray was charged and could not have provided testimony to any fact relevant to those charges." Id. at 274.

Similarly, Defendant has not demonstrated how the identity of DEA 3 would be relevant or helpful to his defense, or how the disclosure would be "essential to a fair trial." See Ray, 803 F.3d at 274. See also United States v. Beals, 698 F.3d 248, 270 (6th Cir. 2012) (No disclosure of confidential informant when "[t]he informant helped orchestrate *the search* that led to discovery of incriminating evidence, not the crimes themselves."). The court will deny Defendant's motion.

## II.  Motion for Disclosure of *Brady* Materials

Defendant seeks the disclosure of exculpatory and impeachment evidence pursuant to Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972). The government represents that it is aware of its obligations

to provide the defense with exculpatory evidence in time for its effective use at trial.  See United States v. Crayton, 357 F.3d 560, 568-69 (6th Cir. 2004) (no violation when impeachment material provided just before witness testified at trial).  The government further represents that it is not aware of any Brady material that has not already been produced or made available.  Accordingly, the court will deny Defendant's motion.

### III.   Motion for Government Agents to Retain Rough Notes

Defendant seeks an order requiring government agents to preserve their rough notes and drafts regarding their investigation of Defendant.  The government states that it has produced and made available for inspection all documents and objects of which it is aware and which are discoverable pursuant to Rule 16.  The government notes that it is unaware of any agent or officer rough notes that contain statements made by Defendant.  Defendant has not demonstrated that the documents he seeks exist or that the rules require disclosure at this time.  See generally United States v. Presser, 844 F.2d 1275, 1285 n.12 (6th Cir. 1988) ("[I]n most criminal prosecutions, the *Brady* rule, Rule 16 and the Jencks Act, exhaust the universe of discovery to which the defendant is entitled.").
Therefore, the court will deny Defendant's motion.

### IV.   Motion for Disclosure of Grand Jury Transcripts

Defendant seeks the disclosure of grand jury transcripts and exhibits pursuant to Fed. R. Crim. P. 6(e)(3), which provides that disclosure may be authorized "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). Defendant argues that he needs the grand jury transcripts to cross-examine and impeach witnesses at trial.

The Supreme Court has recognized that "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings," but that "in some situations justice may demand that discrete portions of transcripts be made available for use in subsequent proceedings." Douglas Oil Co. of California v. Petrol Stops Northwest, 441 U.S. 211, 218–20 (1979). A party seeking disclosure of a grand jury transcript "must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." Id. at 222.

Defendant's general request for grand jury transcripts falls short of the particularized showing required. See Smith v. United States, 423 U.S. 1303, 1304 (1975) (showing of "particularized need" or "compelling necessity" required for disclosure of grand jury materials). He has not alleged facts that would warrant

dismissal of the indictment based upon a matter occurring before the grand jury. See Fed. R. Crim. P. 6(e)(3)(E)(ii). Further, the only grand jury testimony was provided by DEA Task Force Officer Shane Russell, who did not participate in the search warrant execution and who is unlikely to be a witness. The court will deny Defendant's motion.

## V.     Motion to Suppress based upon Lack of Probable Cause

Defendant has filed two motions to suppress evidence. In the first, he argues that there was no probable cause to issue the search warrants, based upon insufficient facts and stale information. Probable cause exists when there is a "'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." United States v. Davidson, 936 F.2d 856, 859 (6th Cir. 1991) (citation omitted). This court gives "great deference" to a magistrate's determination of probable cause, which should be reversed only if it was arbitrarily made. United States v. Coffee, 434 F.3d 887, 892 (6th Cir. 2006).

Viewing the affidavit in its entirety, it provides ample probable cause to support the search warrant. See Govt. Ex. A. The affidavit provides that confidential informants identified Defendant (known as "Jack") as a member of the Lennie Jackson drug trafficking organization. A criminal history check of Defendant revealed he had been convicted of distributing cocaine and other

offenses. In April 2015, while under surveillance, a confidential informant purchased a distribution amount of heroin from Defendant (at the Montana Street address) through a third party. Agents continued surveillance of Defendant, observing him meet with Lennie Jackson and likely conduct a drug transaction with the driver of a Saturn Aura. Agents obtained a warrant authorizing the installation of a GPS tracker on Defendant's vehicle. The electronic surveillance showed that Defendant stopped at the Montana Street address during the day and evening, and spent the night at the Farmington Hills address. Agents also obtained Defendant's tax returns, showing little income, and averred based on their surveillance that Defendant was not legitimately employed.

The Sixth Circuit has held that "a single controlled purchase is sufficient to establish probable cause to believe that drugs are present at the purchase location." United States v. Archibald, 685 F.3d 553, 558 (6th Cir. 2012). In this case, the controlled buy, as well as the additional facts described above, provide sufficient probable cause. The facts also suggested ongoing criminal activity, negating Defendant's unsupported claim of staleness. "[I]f an affidavit recites activity indicating protracted or continuous conduct, time is of less significance. Moreover, although a significant period of time may have elapsed since a defendant's last reported criminal activity, it may be properly inferred that indicia

of criminal activity will be kept for some period of time." United States v. Canan, 48 F.3d 954, 959 (6th Cir. 1995) (citations omitted).

Further, even if probable cause was lacking, suppression of the evidence obtained in the search is not warranted. "When police act under a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted "in objectively reasonable reliance" on the subsequently invalidated search warrant." Herring v. United States, 555 U.S. 135, 142 (2009). Defendant has not alleged culpable conduct on the part of law enforcement that would weigh in favor of suppression. See id. at 144 ("To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."). The court will deny Defendant's motion.

## VI. Motion to Suppress (Exceeding Scope of Warrant)

In Defendant's second motion to suppress, he argues that the agents exceeded the scope of the warrant by searching the upstairs unit of the Montana Street location. The search warrant affidavit described the location to be a single family residence, but as agents conducted the search, they discovered that it was divided into an upstairs unit and a downstairs unit. Defendant contends that the search warrant did not cover the upstairs unit and that the agents should not have

searched that area.

In order to challenge the search under the Fourth Amendment, Defendant must establish that he had a legitimate expectation of privacy in the Montana Street house. See United States v. Mastrometteo, 538 F.3d 535, 544 (6th Cir. 2008). When an individual visits a house for the purpose of selling drugs, and does not stay overnight, he does not have a legitimate expectation of privacy for Fourth Amendment purposes. United States v. Whitehead, 415 F.3d 583, 587-88 (6th Cir. 2005). Defendant has not alleged facts suggesting that he had a legitimate expectation of privacy in the Montana Street location. The evidence demonstrates that the Montana Street house was not Defendant's residence and that he did not stay there overnight. There is no evidence that he owned the property or that he was party to a lease. GPS tracking data and surveillance showed that he visited the Montana Street house during the day, but stayed in Farmington Hills at night. Defendant has not provided evidence from which the court could conclude that he had a legitimate privacy interest in the Montana Street house.

Moreover, "a search warrant inaccurately identifying the situs of the search will, nevertheless, be upheld against a particularity challenge if the warrant faithfully described the structure as it was known or should have been known to the officers after reasonable inquiry." United States v. Noel, 938 F.2d 685, 687 (6th

Cir. 1991). Here, agents had no information suggesting that the Montana Street house was divided into two units prior to executing the search. From the photographs, it appears to be a single family residence: there is one address on the building and one mailbox. The utility bills also do not indicate more than one unit. Defendant has not demonstrated that the agents should have known that the Montana Street house was divided into separate units. Based upon the controlled buy conducted at the Montana Street house, there was probable cause to search the entire residence, which was not negated by the subsequent discovery of two units. See id.; United States v. Woodbury, 485 Fed. Appx. 58, 61 (6th Cir. 2012) ("Under these circumstances, discovering upon execution that a 'two story single family home,' as specified in the warrant affidavit, contained two living units did not disturb the police's probable cause to search the entire property.").

## ORDER

IT IS HEREBY ORDERED that Defendant's motions (Docket Nos. 27-32) are DENIED.

                                      s/John Corbett O'Meara
                                      United States District Judge

Date: December 6, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, December 6, 2016, using the ECF system.

                                              <u>s/William Barkholz</u>
                                              Case Manager