UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

    Plaintiff,

                            Criminal No. 15-20774

v.

                            Honorable Stephen J. Murphy, III

KEITH COLLIER,

    Defendant.
_____/

**United States' Response Opposing the
Defendant's Emergency Motion for Compassionate Release**

In 2015, Keith Collier had accrued six felonies and served a 10-year federal sentence for crack cocaine trafficking. Undeterred, Collier was caught with three firearms, more than 800 grams of heroin, about 260 grams of Fentanyl, about 200 grams of cocaine, drug packaging materials, and more than $220,000 cash spread between his residence and stash house. He pleaded guilty to being a felon in possession of a firearm and possessing with intent to distribute heroin. The Court sentenced him to 136 months in prison.

Collier began serving his sentence on October 2, 2018. He now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

Collier's motion should be denied because he does not satisfy the statutory, substantive requirements for compassionate release. According to the Centers for Disease Control, some of Collier's medical conditions make him more susceptible

to severe complications from Covid-19, and thus are conditions that normally would qualify as "extraordinary and compelling reasons" for release. However, Collier received the first dose of the Pfizer Covid-19 vaccine on March 22, 2021, and he received the second dose on April 12, 2021. (Ex. A at 1). In these circumstances, Collier already has increased protection from the risk of severe illness from Covid-19, meaning his reasons for release are not "extraordinary and compelling." Further, the § 3553(a) factors do not support release based on Collier offense, criminal history, and the fact that he has a long remaining sentence to serve.

The Court should deny Collier's motion for compassionate release.

## Background

From 2013 to April 2015, DEA agents learned that Collier was a high-level member of a drug trafficking organization that sold heroin and cocaine in the Detroit area. In April 2015, a DEA source purchased about an ounce of heroin from Collier through a third party. DEA agents also surveilled Collier, during which they identified his residence (on Summit Drive in Farmington Hills) and his drug stash house (on Montana Street in Detroit).

In May 2015, agents secured and executed search warrants for both locations. At the residence, agents found the following:

- Two handguns (one stolen);
- More than $220,000; and

2

- A City of Detroit water bill for the stash house.

At the stash house, agents found:

- A loaded handgun;
- More than 800 grams of heroin;
- About 260 grams of Fentanyl;
- About 200 grams of cocaine (powder and crack)
- A hydraulic press and dyes (used for pressing drugs);
- Drug packaging materials and digital scale;
- Latex gloves, zip lock bags, a strainer, rubber bands, tape razors, medical masks, a coffee grinder, measuring cups, and cutting agents; and
- Currency packaging materials.

Collier was not at either location and was not arrested. DEA agents investigated the items found in the Detroit stash house. They submitted the used medical masks for DNA testing. Collier's DNA was found in one of the masks.

Collier was indicted on five gun and drug charges. He filed about seven suppression and other motions, all of which were denied. Eventually, he pleaded guilty to being a felon in possession of a firearm and possessing with intent to distribute heroin. His guidelines were 151-188 months, with a 120-month mandatory minimum, based on his offense conduct and criminal history, which included six prior felonies and a prior 10-year federal sentence for crack cocaine trafficking. The Court varied from the guidelines, sentencing him to 136 months in prison.

Collier began serving his current sentence on October 2, 2018, though he received credit for pretrial detention, and is currently incarcerated at FCI Ashland. He is 50 years old, and his projected release date is July 17, 2025. His underlying medical conditions are obesity, kidney disease, and hypertension (high blood pressure). Collier has moved for compassionate release, citing his medical conditions and the Covid-19 pandemic.

## Argument

I. **The Bureau of Prisons has responded to Covid-19 by protecting inmates and instituting the administration of the vaccine at its facilities.**

The Bureau of Prisons has reacted quickly to confront Covid-19's spread within its facilities. *Wilson v. Williams*, 961 F.3d 829, 833–34 (6th Cir. 2020). For over almost a decade it has maintained a detailed protocol for responding to a pandemic. Contrary to Collier's arguments (ECF No. 95, Motion, PageID.1010-1014), and consistent with its protocol, the Bureau of Prisons began planning for Covid-19 in January 2020, and has repeatedly revised its plan. *Wilson*, 961 F.3d at 833–34.

By this point, the Court is aware of the Bureau of Prisons' continued efforts to prevent the spread of Covid-19 in its facilities. BOP Covid-19 Modified Operations Website; BOP FAQs: Correcting Myths and Misinformation.

And, as the Court is aware, pursuant to the CARES Act and Attorney General Directives, the Bureau of Prisons has, in its discretion, increased the number of

4

inmates who are granted home confinement in response to Covid-19. 03-26-2020 Directive to BOP; 04-03-2020 Directive to BOP.

Despite these facts, Collier extensively criticizes the Bureau of Prisons for not doing more. But he does so largely by citing a dissenting opinion and case law from the spring and summer of 2020. (ECF No. 95, Motion, PageID.1012). Also, Collier waited about a year after the Covid-19 pandemic began to file his compassionate release motion, during which time he tested negative at least four times and, based on his medical records, he never contracted Covid-19, which undermines his argument that the Bureau of Prison's efforts have been inadequate to protect him from Covid-19. (Ex. A at 8, 10-13).

Most recently, the Bureau of Prisons has begun vaccinating inmates and prison staff. As of April 12, 2021, the Bureau of Prisons has acquired more than 122,000 doses of the Covid-19 vaccine and is distributing it to staff and inmates. *See* CDC Covid-19 Vaccine Tracker and BOP COVID-19 Vaccination Implementation. The Bureau of Prisons has already initiated the doses of the vaccine in tens of thousands of staff members and inmates. *See Id*. While the precise timing of each inmate's vaccination will depend on many factors, the Bureau of Prisons is working swiftly to vaccinate inmates who consent to receive the vaccine.

Like all other institutions, penal and otherwise, the Bureau of Prisons has not been able to eliminate the risks from Covid-19 completely, despite its best efforts.

But, as mentioned, Collier tested negative for Covid-19 four times. (Ex. A at 8, 10-13). And as of yesterday, April 12, 2021, Collier has received both doses of the Pfizer Covid-19 vaccine. (*Id*. at 1).

Going forward, the Bureau of Prisons' measures will help federal inmates remain protected from Covid-19 and ensure that they receive any required medical care.

## II. The Court should deny Collier's motion for compassionate release.

Collier's motion for a reduced sentence should be denied. A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Rather, a district court's authority to modify a defendant's sentence is "narrowly circumscribed." *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008). Absent a specific statutory exception, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Those statutory exceptions are narrow. *United States v. Ross*, 245 F.3d 577, 586 (6th Cir. 2001). Compassionate release under 18 U.S.C. § 3582(c)(1)(A) is equally narrow.

*First*, compassionate release requires exhaustion. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

*Second*, even if a defendant exhausts, he must show "extraordinary and compelling reasons" for release. 18 U.S.C. § 3582(c)(1)(A).

*Third*, even if a defendant is eligible for compassionate release, a district court may not grant the motion unless the factors in 18 U.S.C. § 3553(a) support release. 18 U.S.C. § 3582(c)(1)(A); *United States v. Ruffin*, 978 F.3d 1000, 1008–09 (6th Cir. 2020).

### A. Collier has satisfied the statutory exhaustion requirement.

Collier satisfied the exhaustion requirement because he filed his motion after the warden denied his request under § 3582(c)(1)(A).

### B. Collier has not shown "extraordinary and compelling reasons" for compassionate release because he is being vaccinated

Resolving the merits of a compassionate-release motion involves a "three-step inquiry": a district court must (1) "find that extraordinary and compelling reasons warrant a sentence reduction," (2) "ensure that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) "consider all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021); 18 U.S.C. § 3582(c)(1)(A). In *Elias*, the Sixth Circuit held that USSG § 1B1.13 is not an "applicable" policy statement for defendant-initiated motions for compassionate release, so there is no policy statement to analyze under the second prong of the *Elias* test.

In this context, Collier has not satisfied the statutory requirement of showing that "extraordinary and compelling reasons" warrant a sentence reduction. That statutory requirement means that a defendant's reasons for release must satisfy two strict

criteria. 18 U.S.C. § 3582(c)(1)(A)(i). The defendant's reasons must be "extraordinary"—meaning exceptional or uncommon. *United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020); *United States v. Sapp*, No. 14-CR-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020). The reasons must also be "compelling"—meaning "so great that irreparable harm or injustice would result if the relief is not granted." *Sapp*, 2020 WL 515935, at *3. A defendant must establish both criteria to satisfy the statute's eligibility threshold. Collier has satisfied neither.

*First*, as an initial matter, Collier's reasons for release are not "extraordinary." Collier's medical records establish that he has obesity (BMI of approximately 33 based on his height and weight) and chronic kidney disease. (Ex. A at 2-5, 9). The CDC has confirmed those conditions increase his risk of severe illness from Covid-19. *See* CDC Risk Factors (as updated). Collier also has hypertension/high blood pressure (not pulmonary hypertension) for which he is prescribed medication. (*Id*. at 4-7). Until recently, hypertension was not a confirmed risk factor, though CDC guidance now states that hypertension "can make you more likely to get severely ill from Covid-19." *Id*.

Normally, the heightened risk that Covid-19 poses to someone with chronic kidney disease and, at times, obesity would cause the government to concede that Collier has shown "extraordinary" reasons for release under § 3582(c)(1)(A).

8

However, as of yesterday, Collier has been fully vaccinated, receiving the first dose of the Pfizer Covid-19 vaccine on March 22, 2021, and the second dose on April 12, 2021. (Ex. A at 1). According to the CDC, he should achieve maximum immunity within two weeks of the second dose. CDC Guidance, Fully Vaccinated. Clinical trial data demonstrated vaccine efficacy was 95.0% for the Pfizer vaccine. CDC, Pfizer Vaccine, Frequently Asked Questions. As a result, Collier already has increased protection from the risk of severe illness from Covid-19, he is fully vaccinated, and Collier's risk associated with Covid-19 will be mitigated in less than two weeks. (Ex. A at 1).

In these circumstances, even with his demonstrated health conditions, Collier cannot establish "extraordinary and compelling reasons" for release because he is significantly less susceptible to the disease. *See United States v. Smith*, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) (Defendant's vaccination (two doses of the Moderna vaccine) against Covid-19 precludes the argument that his susceptibility to the disease is "extraordinary and compelling" for purposes of 3582(c)(1)(A)); *United States v. Goston*, 2021 WL 872215 at *2 (E.D. Mich. Mar. 9, 2021) (Defendant's access to [and refusal of] the Covid-19 vaccination mitigates any extraordinary and compelling reasons that might otherwise justify release); *United States v. McGill*, 2021 WL 662182, at *5 (D. Md. Feb. 19, 2021) (relief denied because the defendant

9

has a measure of immunity conferred by recovering from COVID-19, and receiving the first dose of the vaccine).

Collier's medical conditions, even when considered alongside the Covid-19 pandemic, thus do not rise to the level of an "extraordinary" circumstance.

*Second*, Collier's reasons for release are not "compelling." In the pretrial-release context, the Sixth Circuit has addressed what qualifies as a "compelling" reason for release based on Covid-19. *United States v. McGowan*, No. 20-1617, 2020 WL 3867515, at *2 (6th Cir. July 8, 2020); *Bothra*, 2020 WL 2611545, at *2. That analysis considers (1) the "original grounds" for the defendant's incarceration; (2) the "specificity" of his "stated Covid-19 concerns"; (3) the extent to which the proposed release plan would "mitigate or exacerbate" his risk from Covid-19; and (4) the risk from Covid-19 that his release would pose to others. *McGowan*, 2020 WL 3867515, at *2. In *Bothra*, for instance, the defendant was in his 70s and "had health issues rendering him more vulnerable to contracting [Covid-19]." 2020 WL 2611545, at *2. But he was a flight risk, had orchestrated a large and complex fraud scheme, and was detained at a facility that had very few cases of Covid-19. *Id.* The Sixth Circuit thus held that his circumstances did not present a "compelling" reason for release. *Id.*

Collier's circumstances are even less compelling. The "original grounds" for his incarceration here were his high-level involvement in a large drug trafficking

10

organization, which led to him being caught with three firearms (one stolen), more than 800 grams of heroin, about 260 grams of Fentanyl, about 200 grams of cocaine, drug packaging materials, and more than $220,000 cash at his residence and stash house. *McGowan*, 2020 WL 3867515, at *2. The drug packaging materials included a large hydraulic press used for pressing drugs. The heroin quantity triggered a 10-year mandatory minimum sentence. Also, the presence of 260 grams of the extraordinarily dangerous Fentanyl is noteworthy: at the time of his offense, in May 2015, the DEA had only recently issued a nationwide alert regarding the threat of Fentanyl, which had not yet become prevalent. DEA Press Release.

His conviction for the drug and gun offenses, especially when combined with his criminal record, showed that Collier required a sentence of 136 months in prison. And unlike the pretrial defendant in *Bothra*, Collier was *convicted* of his offense here—not just accused of it. So the justice system's "essential" interest in finality weighs far stronger against Collier's release than it did the defendant's release in *Bothra*. *Teague v. Lane*, 489 U.S. 288, 309 (1989).

Collier also has not shown that his release would mitigate his risk of contracting Covid-19. His record casts significant doubt on whether he would abide by the release conditions and social-distancing protocols that could diminish his risk of contracting Covid-19 if released from custody.

Collier cannot show extraordinary and compelling reasons for release.

### C. The factors in 18 U.S.C. § 3553(a) strongly weigh against compassionate release.

Even when an inmate has shown "extraordinary and compelling reasons," he is still not entitled to compassionate release. Before ordering relief, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine that release is appropriate. 18 U.S.C. § 3582(c)(1)(A). A defendant's failure to establish that the § 3553(a) factors support relief is an independent basis for denying compassionate release. *Ruffin*, 978 F.3d at 1008–09; *accord United States v. Austin*, 825 F. App'x 324, 325–27 (6th Cir. 2020) (upholding a district court's denial of compassionate release based on the § 3553(a) factors); *United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020) (same).

This Court's "initial balancing of the § 3553(a) factors during [the defendant's] sentencing" is presumed to "remain[] an accurate assessment as to whether those factors justify a sentence reduction." *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021). The defendant must therefore "make a compelling case as to why the sentencing court's § 3553(a) analysis would be different if conducted today." *Id.* Here, even if the Court were to find that Collier established extraordinary and compelling reasons for his release, the § 3553(a) factors should still disqualify him.

For starters, Collier's long remaining sentence weighs heavily against release. The Sixth Circuit has repeatedly upheld the denial of compassionate release under § 3553(a) when a defendant has a long remaining sentence, including in a recent

12

published decision. *Ruffin*, 978 F.3d at 1008; *accord Kincaid*, 802 F. App'x at 188–89; *Austin*, 825 F. App'x at 326; *see also United States v. Kincaid*, 805 F. App'x 394, 395–96 (6th Cir. 2020) ("[W]e don't think [the defendant] raises a close question."). This is because the original sentence already reflects the district court's evaluation of "the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law" under § 3553(a). *Kincaid*, 802 F. App'x at 188; *accord Ruffin*, 978 F.3d at 1008. The Court sentenced Collier to 136 months in prison (a variance), he was facing a 120 month statutory mandatory minimum sentence, yet he has served less then 60% of his sentence, and his projected release date is not until July 2025, more than four years from now.

The plain language of the compassionate-release statute makes the point even more directly: it requires that the defendant's reasons for release "warrant such a reduction" in his sentence. 18 U.S.C. § 3582(c)(1)(A)(i). That inquiry depends, at least in part, on the length of time remaining on the defendant's sentence, requiring him to justify the magnitude of his requested sentence reduction. *Id.* So a defendant with more than four years left on his sentence, like Collier, must show that his reasons for release are so powerful that they "warrant" a "reduction" of that size. *Id.*

The other § 3553(a) factors also weigh against granting Collier's motion. Plainly, Collier committed a serious offense. He was engaged in significant drug trafficking, with large quantities of heroin, Fentanyl, and cocaine. The stash house contained

13

drug packaging materials, including medical masks and even a large hydraulic press used to press drugs into distribution quantities. Collier's residence and stash house contained three guns (one stolen). And Collier was found with more than $220,000 in cash at his residence – clearly Collier had been profiting from the drug trade, and substantially profiting off other people's drug addictions, for years.

Collier engaged in these offenses despite having accrued a significant criminal history, which did not deter him from committing this offense when he was in his 40s. The PSR summarizes all of Collier's prior convictions. (PSR ¶ 33-41.) While some are relatively minor, many are not, and together they demonstrate Collier's consistent pattern of engaging in criminal activity during his adult life. Collier's most significant conviction is his 1999 federal conviction for crack cocaine distribution, for which he received a 10-year sentence.

To be sure, Collier does have factors in his favor. As he argues in his motion, Collier has maintained a job while in prison, completed many classes, and avoided discipline. (ECF No. 95, Motion, PageID.1017). He also states that he has addressed his substance abuse issues. (*Id.*). Collier believes that these facts affirm the Court's comment at sentencing that he had an "excellent opportunity at rehabilitation." (*Id.*).

The problem, however, is that the Court already varied downward below the applicable guideline range (151-188 months) based on its belief that Collier would

take advantage of the Bureau of Prisons' programs. This fact makes a further reduction inconsistent with the § 3553(a) factors.

Ultimately, as set forth above, the § 3553(a) factors weigh against granting Collier's motion.

### III. If the Court were to grant Collier's motion, it should order a 14-day quarantine before release.

If the Court were inclined to grant Collier's motion despite the government's arguments above, the Court should order that he be subjected to a 14-day quarantine before release.

### Conclusion

Collier's motion should be denied.

Respectfully submitted,

Saima Mohsin
Acting United States Attorney

*s/Andrew J. Lievense*
Andrew J. Lievense
Assistant United States Attorneys
211 W. Fort Street, Suite 2001
Detroit, MI  48226
andrew.lievense@usdoj.gov
Dated: April 13, 2021          (313) 226-9665

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2021. I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification to all counsel of record.

                                              *s/Andrew J. Lievense*
                                              Andrew J. Lievense
                                              Assistant United States Attorney
                                              211 W. Fort Street, Suite 2001
                                              Detroit, MI  48226
                                              andrew.lievense@usdoj.gov